UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, Plaintiff, | : | 11 Civ. 7425 (JPO) |
| -v- | : | |
| BARFIELD REALTY CORP. et al., Defendants. | : | MEMORANDUM AND ORDER |

J. PAUL OETKEN, District Judge:

This is a declaratory judgment action in which Plaintiff Nautilus Insurance Company ("Nautilus") seeks a declaration that it has no duty to indemnify or defend Defendants Barfield Realty Corporation ("Barfield") and Cedar Ave Laundromat SFIC ("Cedar Ave"),[1] in an underlying state court action brought by Joseph Castelli ("Castelli"). Nautilus brings suit against Defendant Castelli,[2] seeking a declaration that it has no duty to pay his medical expenses associated with the incident giving rise to his state court lawsuit.

Plaintiff has moved for summary judgment, arguing that: (1) under the plain language of the contract between Nautilus and Barfield, there is no issue of material fact as to Nautilus' duty to indemnify or defend any of the parties associated with the underlying action, nor as to its duty to pay medical costs associated with the underlying action; and (2) Defendant Barfield's counterclaims fail to state a viable cause of action, given the plain language of the contract at issue.

[1] Cedar Ave, though not named in the underlying state court action, is named as a defendant in the instant case.

[2] Defendant Castelli has adopted the arguments made by Defendant Barfield in opposition to Nautilus' motion for summary judgment their entirety. (Affirmation of Dennis Bellovin in Opposition, Dkt. No. 30.)

For the reasons that follow, Plaintiff's motion for summary judgment is granted as to all Defendants, and Defendants' counterclaims are dismissed.

## I. Background

The following facts are drawn from the parties' Local Civil Rule 56.1 Statements and other submissions in connection with the instant motions, and are undisputed unless otherwise noted.[3]

### A. Procedural History

On July 25, 2011, Castelli filed a complaint in Bronx County Supreme Court against Barfield, alleging negligence and violations of New York Labor Law, for injuries allegedly suffered while working at Barfield's premises. (*See* Affidavit of Amy Nechamkin, ("Nechamkin Aff."), Dkt. No. 16, Exhibit 5.) On or about August 29, 2011, Nautilus received a copy of this underlying complaint. (*Id.* at ¶ 8.) After examining the allegations in the complaint, together with its insurance policy, Nautilus issued a letter to Defendants Barfield and Cedar Ave, disclaiming a duty to indemnify or defend in the underlying action. (*Id.* at ¶ 17; *id.* at Exhibit 6.) Nautilus stated in its letter that it would provide a gratuitous defense for Barfield in the underlying action, reserving the right to withdraw if a court determines that none of the damages claimed by Castelli were covered by the Nautilus policy. (*Id.* at Exhibit 6.) On October 20, 2011, Nautilus filed its complaint in the instant action in this Court, seeking a declaratory judgment determining the rights and liabilities of the parties associated with the underlying case in state court. (Complaint, *Nautilus v. Barfield Realty Corp., et al.*, 1:11-cv-07425, Dkt. No. 1.)

---

[3] Defendant Barfield has largely failed to respond directly or correspondingly to Nautilus' 56.1 submission, and instead, in its own 56.1 submission, primarily turns to disputing Castelli's complaint in the underlying state court action, thus admitting those of Plaintiff's allegations it does not specifically address. *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

**B. The Underlying Action**

This case arises out of those underlying personal injury claims filed by Castelli, in Bronx County Supreme Court in July 2011, against Defendant Barfield. *Castelli v. Barfield Realty Corp.*, No. 306694/11 (N.Y. Sup. Ct. 2011). In that action, Castelli is suing Barfield for injuries sustained while an employee of JFD Contracting Company, Inc. ("JFD"). *Id.* Castelli was allegedly injured while working for JFD to repair the premises located at 1793 Sedgwick Avenue, in the County of the Bronx, State of New York. (*See* Nechamkin Aff., Exhibit 5, at ¶¶ 7, 9.) Barfield does not deny that it owns the premises located at 1793 Sedgwick Avenue. (*See* Defendant Barfield Realty Corp.'s Statement of Material Facts Not in Dispute, Dkt. No. 26, at ¶ 2, 11; Nautilus's Statement of Material Facts Not in Dispute, Dkt. No. 18, at ¶ 2.) Additionally, Barfield, in its memorandum opposing summary judgment, refers to Castelli as an employee of JFD. (Defendant Barfield Realty Corp.'s Reply Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, Dkt. No. 27, at 1) ("On or about October 22, 2011 Castelli an employee of JFD was allegedly injured while working at the subject property.")

While Barfield expressly denies liability for Castelli's injuries, disputing many of the allegations in the underlying suit (*see, e.g.*, Dkt. No. 26 at ¶¶ 19, 20, 23, 24), the merits of Castelli's claims in the state court action are not at issue here. *See* 28 U.S.C. § 2201(a) (noting that a declaratory judgment action is one in which the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought").

On October 21, 2010, a fire broke out at the subject property, damaging it substantially. (Affidavit of Barrington Fields, Affirmation in Opposition to Motion, ("Barrington Aff."), Dkt. No. 25, at ¶ 8.) As a result of the fire, Barfield's president, Barrington Fields ("Fields"),

contracted with JFD to "effectuate all emergency repairs at the subject property." (*Id.* at ¶ 11.) Fields contends that he "never oversaw, supervised, or otherwise retained control over the work performed by JFD or any of their agents" (*id.* at ¶ 12), and notes that Endurance American Insurance Company ("Endurance"), his original carrier, paid for the work performed by JFD. (*Id.*)

**C. The Nautilus Policy**

Nautilus undisputedly issued a commercial general liability policy (the "Policy") to Barfield and Cedar Ave for the period of June 16, 2010 through June 16, 2011. (*See* Dkt. No. 18, at ¶ 1; Barrington Aff., at ¶ 4; Dkt. No. 26, at ¶ 1.) This Policy, numbered NN017226, lists the location of Barfield's premises as the subject property on Sedgwick Ave (*see, e.g.*, Nechamkin Aff., Exhibit 1, at S150(07/09); Dkt. No. 18, at ¶ 2), and includes several provisions relevant to the instant action.

First, the Policy, a commercial lines policy,[4] establishes in its commercial general liability coverage form that Nautilus "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (*Id.* at CG0001(I)(A)(1)(a).) The Policy also states that Nautilus "will have the right and duty to defend the insured against any 'suit'" seeking personal injury or property damage. (*Id.*)

However, the Policy coverage for bodily injury explicitly excludes "'[b]odily injury' to: (1) An 'employee' of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business . . . ." (*Id.* at

[4] A commercial lines policy is an insurance policy that is not obtained primarily for personal, family, or household purposes. (Dkt. No. 15, Exhibit 1.)

CG0001(I)(A)(2)(e)(1).) According to the contract, the exclusion applies "[w]hether the insured may be liable as an employer or in any other capacity." (*Id.*)

Second, the Policy also contains an endorsement, which alters and further clarifies the meaning of the word "employee," as used throughout the policy. (*See id.* at L205.) The endorsement denotes that an "employee" of the insured includes:

> [A]ny person or persons who provide services directly or indirectly to any insured, regardless of where the services are performed or where the 'bodily injury' occurs including, but not limited to, a 'leased worker,' a 'temporary worker,' a 'volunteer worker,' a statutory employee, a casual worker, a seasonal worker, a contractor, a subcontractor, an independent contractor, and any person or persons hired by, loaned to, employed by, or contracted by any insured or any insured's contractor, subcontractor, or independent contractor.

(*See id.* at L205(C) (modifying CG0001(V)(5).) This endorsement is integrated as part of the Policy and includes a notation explaining that the endorsement changes the policy, imploring its readers and signatories to "please read it carefully." (*Id.*) *See Richner Comm., Inc. v. Tower Ins. Co. of New York*, 72 A.D.3d 670, 671, 898 N.Y.S.2d 615 (2d Dep't 2010) ("A policy is read as a whole and 'in construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement.'" (internal citations omitted)).

Third, in addition to the L205 endorsement, which changes the *definition* of employee, another such endorsement specifically addresses the *status* of contractors and subcontractors. (*See id.* at L282.) Endorsement L282, titled "Exclusion - Contractors and Subcontractors," modifies Section I of the Policy, denoting that the coverage "does not apply to 'bodily injury,' 'property damage,' 'personal and advertising injury' or medical payments arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or

any acts or omissions in connection with the general supervision of such work." (*Id.* at L282(A).)

Fourth, the Policy also includes a section concerning Nautilus' liability for medical payments associated with accidents on the insured's premises. (*See id.* at CG0001(I)(C).) While the Policy states that Nautilus will pay medical expenses for certain bodily injuries incurred under specific circumstances inside the coverage territory (*id.* at CG0001(I)(C)(1)(a)-(b)), within this section too inheres explicit exclusions for, *inter alia*, "any insured"; "a person hired to do work for on behalf of any insured or a tenant of any insured"; and any person "[e]xcluded under Coverage A." (*Id.* at CG0001(I)(C)(2)(a), (b), (g).) Furthermore, the aforementioned L282 endorsement also specifically applies to these medical payment provisions. (*See id.* at L282(A) ("The following exclusion is added to . . . **Coverage C - Medical Payments**" (emphasis in original).)

Defendants dispute neither the existence of the policy (*see generally* Dkt. No. 26; Dkt. No. 30), nor the fact that Fields—Barfield's president—signed the contract with Nautilus. (*See* Barrington Aff.) Instead, Barfield contends that the policy provisions are ambiguous in scope (Dkt. No. 27, at 3-4), arguing that the ambiguity led to a misunderstanding between its president and Nautilus. (*Id.* at 5.)

## II. Legal Standard

A court may not grant a motion for summary judgment unless all of the parties' submissions, read together, reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). The burden of "establishing the absence of any genuine issue of material fact" falls to the moving party, *Zalaski v. City of Bridgeport*

*Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010), whereas the non-movant benefits from the court's construction of all facts, and the resolution of all ambiguities, in its favor. *See Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) ("In determining whether summary judgment is appropriate, this Court will 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" (internal citations omitted)).

While a court must read the facts "in the light most favorable" to the non-movant, *id.*, it must nevertheless "dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). And while a court must deny a motion for summary judgment whenever reasonable jurors could disagree as to the result, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III. Discussion

### A. The Policy's Application

As noted *supra*, the Policy states, as a baseline, that pursuant to the insurance agreement, Nautilus "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the] insurance applies." (Nechamkin Aff., Exhibit 1, at CG00001(I)(A)(1).) Moreover, the Policy adds that Nautilus "will have the right and duty to defend the insured against any 'suit' seeking those damages," with the caveat that this duty does not extend to those damages "to which [the] insurance does not apply." (*Id.*)

"Under New York law, an insurer's duty to indemnify arises under the insurance contract." *Transportation Ins. Co. v. AARK Const. Group, Ltd.*, 526 F. Supp. 2d 350, 356

(E.D.N.Y. 2007).  The duty to defend is known for its breadth, extending beyond even the duty to indemnify, s*ee Northville Indus. Corp. v. Nat'l Union Fire Ins. Co.*, 218 A.D.2d 19, 25, 636 N.Y.S.2d 359 (2d Dep't 1995), and will "arise[] whenever the allegations in the complaint fall within the risk covered by the policy."  *Ruder & Finn v. Seaboard Sur. Co.*, 52 N.Y. 2d 663, 669 (N.Y. Ct. App. 1981).

 Despite the breadth of these duties, courts must nevertheless give unambiguous provisions of insurance contracts their plain and ordinary meaning, "refrain[ing] from rewriting [an] agreement."  *U.S. Fid. & Guar. Co. v. Annuziata*, 67 N.Y.2d 229, 232 (N.Y. Ct. App. 1986) (internal quotations omitted); *see also White v. Cont'l Cas. Co.* 9 N.Y.3d 264, 267 (N.Y. Ct. App. 2007) ("As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning.").  Indeed, "[w]here the terms of an insurance policy are clear and unambiguous, interpretation of those terms is a matter of law for the court." *B.U.D. Sheetmetal, Inc. v. Mass. Bay Ins. Co.*, 248 A.D.2d 856, 857, 670 N.Y.S.2d 228 (3d Dep't 1998).

Additionally, where the terms of an insurance contract unambiguously bar a claim of coverage, including defense or indemnification, that plain meaning will control, making summary judgment appropriate. *See Green Harbour Homeowners' Ass'n, Inc. v. Chicago Title Ins. Co.*, 74 A.D.3d 1655, 1658, 905 N.Y.S.2d 304 (3d Dep't 2010) ("Where, as here, an insurance policy's unambiguous terms demonstrate that the policy does not cover the claimed loss, summary judgment is appropriate.").

It is true that exclusions must be stated in "unmistakable language," and "are not to be extended by interpretation or implication," but rather must be "accorded a strict and narrow construction."  *Seaboard Sur. Co. v. Gillette Co.*, *et al.*, 64 N.Y.2d 304, 310 (N.Y. Ct. App. 1984). Moreover, all ambiguities must be resolved in favor of the insured, rather than the insurer.

*See Pepper, et al. v. Allstate Ins. Co., et al.*, 20 A.D.3d 633, 635, 799 N.Y.S.2d 292 (3d Dep't 2005) (noting "when an insurance policy's meaning is not clear or is subject to different reasonable interpretations, ambiguities must be resolved in the insured's favor and against the insurer"); *Boggs v. Commercial Mut. Ins. Co. & Cote Agency, Inc.*, 220 A.D.2d 973, 974, 632 N.Y.S.2d 870 (3d Dep't 1995) ("Where there is ambiguity it is the insurer's burden to prove that the construction it advances is not only reasonable, but also that it is the only fair construction of the language.").

Yet, the fact that an insurer bears the burden in the event of an ambiguity does not diminish the legal effect of policy language that leaves no room for debate. *See State Farm Mut. Auto. Ins. Co. v. Glinbizzi, et al.*, 9 A.D.3d 756, 757, 780 N.Y.S.2d 434 (3d Dep't 2004) ("Courts must determine the rights and obligations of parties under an insurance contract based on the policy's specific language.").

Here, the Policy, in relevant part, expressly excludes coverage for the insured's employees (Nechamkin Aff., Exhibit 1, at CG0001(I)(A)(2)(e)(1)(a)), further clarifying the Policy definition of "employee" to include "a contractor, a subcontractor, an independent contractor, and any person or persons hired by, loaned to, employed by, or contracted by any insured." (*Id.* at L205(C).) Another, separate endorsement further excludes contractors, stating that coverage does not extend to injuries or medical payments associated with "work performed by any contractor or subcontractor whether hired by or on behalf of any insured." (*Id.* at L282(A).)

Castelli, employed by JFD, alleges that his injuries occurred while working at the subject property. Despite the fact that Endurance—Defendant Barfield's primary insurer—instructed Barfield to contract with JFD to perform the necessary repairs, following the fire at the subject

property (Affirmation of Mark A. Crawford, in Opposition to Summary Judgment Motion, ("Crawford Aff."), Dkt. No. 29, at ¶ 4), Castelli's claims fall squarely within the exclusion contemplated by the plain language of the Policy.

First, Barfield admits to contracting with JFD;[5] second, Barfield admits to hiring JFD to perform necessary repairs at the subject property; and third, Barfield's counsel admits in his affirmation that Castelli was an employee of JFD. (*See* Dkt. No. 26, at ¶ 7; Barrington Aff., at ¶ 11; Crawford Aff. at ¶ 4.) Thus, given that contractors and subcontractors are explicitly included in the definition of the term, under the Policy's unambiguous definition, Castelli constitutes an employee.

Even if Castelli were not considered an employee for purposes of the employee exclusion, Endorsement L282 unambiguously excludes contractors and subcontractors in their own right. (Nechamkin Aff., Exhibit 1, at L282(A).) Thus, whether Castelli is considered Barfield's employee, or merely an employee of the contractor *hired by* Barfield at the behest of its primary insurance company, his injuries nevertheless fall within the plain language of the Policy exclusion.

Other courts interpreting Nautilus policies nearly identical to the one at issue in the instant case have also found like exclusions enforceable in declaratory judgment actions. In *Nautilus Ins. Co. v. Matthew David Events, Ltd.*, 69 A.D.3d 457, 893 N.Y.S.2d 529 (1st Dep't 2010), the First Department Appellate Division reversed the Supreme Court of New York County, which had previously denied Nautilus' motion for summary judgment on its declaratory judgment action, citing as grounds the ambiguity of the underlying policy. The reasoning in *Matthew David Events* is instructive. In that case, one Timothy Shea ("Shea") sought monetary damages for alleged personal injuries incurred while working at a party sponsored by

[5] A copy of the contract between Barfield and JFD can be found at Dkt. No. 27, Exhibit B.

Bloomberg, LLC and Bloomberg, Inc. (together "Bloomberg"). Bloomberg had entered into a contract with Matthew David Events ("MDE") to plan the event, and MDE in turn had entered into an agreement with United Stage Associates ("Stage") to perform labor and services at the event. *Id.* at 458. Shea, an employee of Stage, was allegedly injured on the job, and brought suit against MDE. *Id.*

At the time of the event, MDE was insured by Nautilus and subject to a commercial liability policy similar to the Policy at issue here. After informing MDE of its denial of coverage, Nautilus filed a declaratory judgment action, and later, a summary judgment motion in the Supreme Court of New York County. *Id.* In its action, Nautilus claimed, *inter alia*:

> [T]he policy did not apply to liability as a result of bodily injury to an employee of the insured arising out of and in the course of employment or performing duties related to the conduct of MDE's business. Specifically, the complaint alleges that at the time of the accident, Shea was working for Stage, a company performing duties relating to MDE's work. Because Shea was performing duties related to MDE's work at the time of the accident, and was thus an "employee" of MDE, as the word was defined by the policy, the policy did not provide defense or indemnity coverage to MDE in the underlying action and Nautilus was entitled to a declaration that no coverage was owed to MDE for any claims asserted by Shea.

*Id.* at 458-459. In opposition to Nautilus' motion for summary judgment regarding this action, MDE contended, *inter alia*, "that the language of the employee exclusion was ambiguous since it was not clear whether or not employees of a contractor were included." *Id.* at 459. And though Nautilus argued that the language was unambiguous, and clearly applicable, due to Shea's status as an "employee" of MDE at the time of the event, the Supreme Court denied the motion, "holding that the employee exclusion was inapplicable," adding that "exclusions from coverage in an insurance policy must be specific and clear in order to be enforced," with all ambiguities construed against the insurer. *Id.*

Upon review, the Appellate Division reversed, holding that Nautilus had indeed "met its burden of demonstrating that the exclusion provision relied upon by the court to dismiss the third cause of action clearly applies to the underlying action." *Id.* at 460. As here, the policy in *Matthew David Events* contained an exclusion for employees, which explicitly included "any person or persons 'hired by, loaned to, leased to, contracted for, or volunteering services to the insured, whether or not paid by the insured.'" *Id.* The Appellate Division rejected the contention that this language could reflect anything other than its unmistakable plain meaning, noting that any argument that the term "employees" included only those directly hired by MDE would render the definitional provisions of the contract a "nullity." *Id.* ("We agree with Nautilus that giving the words 'contracted for' their plain and ordinary meaning, MDE's retention of a subcontractor to perform work for the Bloomberg event at Randall's Island constituted services for the insured and thus falls within the scope of the employee injury exclusion. Indeed, the 'contracted for' language of the employee exclusion clearly contemplates that a contractor could be retained by a party other than the insured on the insured's behalf, and that an injury to that contractor or its employee would fall within the scope of the exclusion.").[6]

[6] Additional jurisdictions have also come to the same conclusion with respect to other, similar Nautilus policies. *See, e.g., Nautilus Ins. Co. v. Jona Enterprises, Inc.*, 2012 WL 266363, No. 09-C-04654 (N.D. Ill. 2012) (applying a similar subcontractors and contractors endorsement exclusion to the underlying claims in a state court law suit and ruling in favor of Nautilus); *id.* at *6 ("The question here is whether the policy excludes coverage for bodily injury to an employee of the insured's subcontractor. The Court concludes that it does. Reading the policy as a whole, it is clear that the parties intended to expand the definition of 'employee' for purposes of the Employee Exclusion."); *Nautilus Ins. Co. v. Triple C Const., Inc.*, 2011 WL 42889, *5, Civ. No. 10-2164 (D.N.J. 2011) (holding that Nautilus general commercial liability "unequivocally exclude[d]" a construction worker's claim against the policy holder, because he was injured while working for a company contracted by the policy holder, and the "Policy expressly exclude[d] 'bodily injury' to an 'employee' arising 'out of and in the course of employment'"); *Nautilus Ins. Co. v. K. Smith Builders, Ltd.*, 725 F. Supp. 2d 1219 (D. Haw. 2010) (granting Nautilus' motion for summary judgment and noting that it owed no duty to defend or indemnify the policy holder for claims made by an employee of its subcontractor, pursuant to the claimant's status as an employee); *see also Congregation B'Nai Israel*, 900 F. Supp. 641 (E.D.N.Y. 1995), *aff'd* 101 F.3d 685 (2d Cir. 1996) (table) ("The only plausible interpretation of the exclusion is that the insured entities collectively bear the risk of liability arising out of their hiring of independent contractors.").

**B. Barfield's Arguments, Defenses, and Counterclaims**

Defendants Barfield and Castelli advance several arguments in favor of their position that Nautilus owes both indemnification and defense under the Policy. First, they contend that there was no meeting of the minds as to the original contract. Second, they argue that the policy exclusions at issue are ambiguous, as they fail to contemplate the existence of exigent circumstances, such as the fire giving rise to the repairs that necessitated the contract with JFD. Third, Defendants claim that Barfield did not supervise the work performed by JFD at the subject property. Finally, Defendants dispute many of the allegations in the underlying action. (*See generally* Dkt. No. 27.) These arguments are meritless, given the clarity of the Policy language. This Court will address each briefly in turn.

Defendant Barfield contends that its president "believed that the insurance policy covered the loss that he incurred," arguing that "nowhere in the subject policy does it identify the types of loss that would be excluded." (Dkt. No. 27, at 3.) However, Fields' subjective belief with respect to the Policy's contents does not negate the binding force of its unmistakable language. Moreover, Barfield signed the Policy, which states in various places, in no uncertain terms, the specific variants of injuries that will lead to coverage, and those that are excluded. It is well-settled that the subjective belief of a party to a contract cannot override its plain language, which here controls the question of coverage as a matter of law. *See Teichman, et al. v. Community Hosp. of W. Suffolk*, 87 N.Y.2d 514, 520 (N.Y. Ct. App. 1996) ("As in the construction of contracts generally, including insurance contracts particularly, we give unambiguous terms their plain and ordinary meaning. Courts 'may not make or vary the contract of insurance to accomplish [their] notions of abstract justice or moral obligation'" (quoting *Breed v. Ins. Co. of N. Am.* 46 N.Y.2d 351, 355 (N.Y. Ct. App. 1978)). Additionally, a party's naked assertion or

belief does not raise a genuine issue of material fact where summary judgment is concerned. *See Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (internal footnote omitted)).

Next, while it is true that Barfield contracted with JFD at the behest of its property insurer, Endurance, that fact is irrelevant to the scope of the Policy. Nowhere in the Policy does it state that coverage is affected by whether the insured pays for the contracting work itself, or whether the event giving rise to the work is covered by another form of insurance. Similarly, the fact that Barfield did not supervise the work performed by JFD does not negate JFD's status as a contractor, and by extension, pursuant to the Policy language, an employee. Additionally, the Contractors and Subcontractors Exclusion is unmistakably applicable, even where the insured did not supervise the work, stating that coverage is unavailable for such persons "whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work." (Nechamkin Aff., Exhibit 1, at L282(A).)

Moreover, this Court agrees with Plaintiff that Barfield "conflates its *liability* policy issued by Nautilus . . . with [its] *property* policy issued by [Endurance], [which] provides coverage for damage to Barfield's own building . . . ." (Plaintiff Nautilus Insurance Company's Reply Memorandum of Law in Further Support of its Motion for Summary Judgment, Dkt. No. 31, at 4.) The existence of a property policy that covers Barfield's losses in the event of fire, as the Endurance policy indeed did, does not nullify the contents of Nautilus' general commercial liability policy. Barfield's assertions that Castelli's work benefited the "public at large" (Dkt. No. 27, at 7), prevented the building from becoming an "attractive nuisance" (*id.* at 1), and constituted emergency repairs, rather than renovations (*id.* at 7), are unpersuasive. As Plaintiff

notes, the Policy contains no language to suggest that it applies only intermittently, depending on the facts causing the injury or the purpose of the work.  (Dkt. No. 31, at 7.)

Finally, Barfield contends that Nautilus relied heavily on the complaint in the underlying action.  In fact, it is permissible for Plaintiff to have relied on those state court allegations, as the construction of the Policy does not depend on the merits of Castelli's individual claims.  Instead, the construction of the Policy is a matter of law for this Court, independent of whether Castelli recovers for his alleged injuries.  Furthermore, in the instant case, though Barfield disclaims liability for Castelli's injuries, it has admitted, as discussed *supra*, not only to the fact of Castelli's employment with JFD, but also to contracting with JFD—the crucial points that are relevant to determining his classification as an employee under the Policy.

Nautilus also argues that it is entitled to dismissal of Barfield's two counterclaims for breach of contract and bad faith breach of insurance contract.  This Court agrees.  As Plaintiff explains in the memorandum of law in support of its motion, there can be no breach of contract or bad faith breach of the insurance contract where an insurer rightfully denies coverage under a policy.  This Court agrees with Plaintiff that the "determination of the merits of [the declaratory judgment action] requires dismissal of the [counterclaims]."  (Plaintiff Nautilus Insurance Company's Memorandum of Law in Support of its Motion for Summary Judgment, Dkt. No. 19, at 19.)  *Cf. Core-Mark Intern. Corp. v. Commonwealth Ins. Co.*, 2006 WL 2501884, *9, No. 05-Civ-0193 (S.D.N.Y. 2006) ("Because this Court has already analyzed the parties' rights under the Policy in connection with the breach of contract claim, a declaratory judgment on the same issue would be superfluous.  Commonwealth's motion for summary judgment is therefore granted with respect to Core-Mark's declaratory judgment claim.").

**C. Defendant Cedar Ave**

Though Defendant Cedar Ave is not named as a party to the underlying action, Nautilus seeks an additional declaration that it owes no duty to indemnify or defend this other insured for costs associated with Castelli's claims. Given that this party could be named as a defendant in the future, this Court also addresses the rights and liabilities of Nautilus and Cedar Ave with respect to the underlying state court action.

While Cedar Ave did not contract with JFD, it is named as an insured on the Policy together with Barfield. There is precedent for extending the application of a subcontractors and contractors exclusion, like the endorsement in the instant case, to a named insured other than the party that arranged for the work at the subject property. For example, in *B'Nai Israel*, discussed *supra*, the plaintiff had issued a general liability policy to several religious congregations and schools. 900 F. Supp., at 643. The litigation began when an employee of a contractor fell off a ladder while working at one of the policy holder's properties. *Id.* The employee sued the congregation in state court, and the insurance company then sought a federal court declaration that it owed no duty to defend or indemnify the insured for claims associated with the incident. *Id.* at 643-44. The congregation countered that one of the other insured parties had contracted with the construction company hired to do the work, and as such, the exclusion did not apply. *Id.* at 645. Judge Gleeson found this reasoning unpersuasive, relying on the plain language of the subcontractors and contractors exclusion, which clearly stated that the insurance company could disclaim all coverage for "work performed for *any* insured by independent contractors." *Id.* (internal quotations omitted) (emphasis in original). While the plain meaning of the exclusion controlled, the court also noted, in the alternative, that there were no "meaningful distinctions" between the insured entities. Moreover, Judge Gleeson held that to adopt the congregation's

argument would produce an "absurd result," allowing one insured to avoid responsibility and payment for all personal injury claims against it, simply by arranging with another named insured to contract for its construction work. *Id.* at 645-46.

Here, Plaintiff, citing *B'Nai*, asks this Court to avoid such an "absurd result," by declaring that it owes no duty to Cedar Ave, despite the fact that Barfield, not Cedar Ave, contracted with JFD. This Court agrees with Plaintiff. The Contractors and Subcontractors Exclusion clearly states that the insurance does *not* apply to bodily injury or medical payments "arising out of work performed by *any* contractor or subcontractor whether hired by or on behalf of *any* insured." (Nechamkin Aff., Exhibit 1, at L282(A).) Thus, even though Barfield, not Cedar Ave, contracted with JFD, the exclusion clearly states that irrespective of which insured hired a particular contractor or subcontractor, all insured parties are equally bound by the endorsement's language.

This Court's analysis, however, cannot end there. It must also address the interaction between the aforementioned exclusionary language and the "separation of insureds" clause located in Section IV of the Policy. (*See id.* at CG0001(IV)(7) ("Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies: (a) As if each Named Insured were the only Named Insured; and (b) Separately to each insured against whom claim is made or 'suit' is brought.") Importantly, there is some disagreement in the case law concerning the relationship between exclusionary language, such as the clauses present in the L282 Endorsement, and the Separation of Insureds language. *Compare Shelby Realty LLC v. Nat'l Surety Corp. & Fireman's Fund Ins. Co.*, 2007 WL 1180651, No. 06-Civ-3260 (S.D.N.Y. 2007) (holding that an employee exclusion read in conjunction with a separation of insureds clause did not "relieve [the insurer] of its

obligation to indemnify"), *with K. Smith Builders*, 725 F. Supp. 2d, at 1219 (holding that "a separation of insureds clause does not prevent an exclusion from barring coverage to *any* insured, even when the particular insured seeking coverage is not himself the employer"), *and Evanston Ins. Co. v. OEA, Inc.*, *et al.*, 2005 WL 1828796, No. CIVS02-1505 (E.D. Cal. 2005) (holding that the separation of insureds clause does not alter the plain language of the exclusionary clause). However, this Court is persuaded by the latter view that a separation of insureds clause need not in fact preclude the applicability of unambiguous exclusionary language referring to "any insured."

To hold otherwise would render the exclusionary language inoperative, running counter to the canons of contractual interpretation that counsel against such determinations. *U.S. Underwriters Ins. Co. v. Affordable Housing Foundation, Inc.*, *et al.*, 256 F. Supp. 2d 176, 181 (S.D.N.Y. 2003) ("When construing the terms of an insurance contract, an interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable."). And while it is indeed true that all ambiguities, especially in the case of exclusionary clauses, must be resolved in favor of the insured, *id.* at 181 (discussing *contra proferentem*), the interaction between these two clauses does not create an ambiguity unless it alters the objective understanding of the parties. *See Evanston*, 2005 WL 1828796, No. CIVS02-1505, at *7 ("[The insurers] argue that, when the policy is read as a whole and in light of the underlying purpose of the separation of insureds clause, the separation of insureds clause does not alter the plain language of the employment exclusion clause.").

This Court finds convincing the argument that where exclusionary endorsements refer to "*the* insured," rather than "*any* insured," the separation of insureds language does indeed control,

as the clauses may be read together in harmony. *Cf. Employers' Liability Assurance Corp., Ltd. v. Travelers Ins. Co.*, *et al.*, 411 F.2d 862, 865 (2d Cir. 1969) ("Travelers claims the clause excludes employees of any insured; Employers counters that it excludes only employees of the insured seeking recovery under the policy, a construction somewhat favored by the severability clause. Since either construction would come within the reach of the words, we must look to probable purpose and to good sense."). However, where, as here, the language of the exclusion refers to "*any* insured" it should be read to supersede the separation of insureds language in order both to effectuate its plain meaning, and to avoid rendering the clause a nullity. *See Evanston*, 2005 WL 1828796, No. CIVS02-1505, at *8 ("To hold that the term 'any insured' in an exclusion means 'the insured making the claim' would collapse the distinction between the terms 'the insured' and 'any insured' in an insurance policy exclusion clause, making the distinction meaningless. It would also alter the plain language of the clause . . . ."); *see also Moleon v. Kreisler Borg Florman General Const. Co. Inc.*, *et al.*, 304 A.D.2d 337, 340, 758 N.Y.S.2d 621 (1st Dep't 2003) ("New York courts have held that employee exclusionary clauses containing the same or similar language are plain and unambiguous and that such a clause applies to exclude coverage to an additional insured where, as here, the main action is brought against such additional insured by the employee of a named insured.").

Thus, the same plain language in the Policy applies to any and all claims Castelli might have against Cedar Ave as well. The Policy's contractor and subcontractors exclusion applies to coverage for injuries "arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured." (Nechamkin Aff., Exhibit 1, at L282(A).) In fact, the "any insured" language appears throughout relevant portions of the policy. (*See id.* at L205(C) (defining "employee" as "any person or persons who provide services directly or indirectly to

any insured"); *id.* at CG0001(I)(C)(2)(a), (b), (g) (stating that Nautilus will have no liability for the medical payments of "any insured," or "a person hired to do work for on behalf of any insured or a tenant of any insured.") In sum, Cedar Ave, to the extent that it exists as a separate entity, is also barred from coverage for Castelli's claims, even though Barfield was the contracting party.

**IV. Conclusion**

It is undoubtedly true that under New York law the insurer bears the burden of establishing that an exclusionary clause applies. *Shelby*, 2007 WL 1180651, No. 06-Civ-3260, at *3. However, where the insurer meets its burden, and where the terms of a policy are unambiguous, summary judgment is appropriate. Here, Nautilus has met its burden.

Accordingly, Plaintiff's motion for summary judgment on its claims and Defendant Barfield's counterclaims is GRANTED. This Court declares that the plain language of the Policy relieves Nautilus of any duty to indemnify or defend Defendants Barfield and Cedar Ave with respect to Castelli's claims in the underlying state court action. Furthermore, this Court declares that Nautilus owes no duty to pay for Castelli's medical expenses associated with the underlying action.

The Clerk of Court is directed to terminate the motion at Docket No. 15 and to close this case.

SO ORDERED.

Dated: October 16, 2012
New York, New York

J. PAUL OETKEN
United States District Judge